IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JONA GOLDSCHMIDT,          )
                           )
        Plaintiff,         )
                           )
    v.                     )    No. 05 C 1822
                           )
HON. GLORIA G. COCO,       )
                           )
        Defendant.         )

## MEMORANDUM OPINION AND ORDER

The plaintiff, Jona Goldschmidt, sues the defendant, the Honorable Gloria G. Coco, an associate judge of the Circuit Court of Cook County, Illinois, under 28 U.S.C. § 1983, for violation of his civil rights. Mr. Goldschmidt seeks declaratory relief. The primary focus of his claims is a court policy promulgated by the defendant and enforced in the Domestic Violence section of the Municipal Court of Chicago. Pursuant to the policy, members of the public are forbidden to take notes in the courtrooms. Persons who violate the policy are subject to expulsion. The defendant moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. I grant the motion in part and deny it in part.

### Allegations of the Complaint

The complaint contains the following allegations of fact. The plaintiff is a resident of Illinois, a licensed attorney, and a

college professor who teaches classes in criminal justice. The defendant acts as supervising judge of the Domestic Violence section of the Circuit Court and sits in Room 601 of the courthouse located at 1340 S. Michigan Avenue, Chicago, Illinois. At all times relevant to the matters alleged in the complaint, the defendant acted under color of state law.

For the past nine years, Mr. Goldschmidt has assigned his criminal justice students to monitor court proceedings in the state and federal courts sitting in Chicago and the surrounding counties, in order to learn about their operations. He advises the students to attend 10 hours of criminal court or domestic violence court monitoring each semester, and provides them with the names, addresses and various security procedures they can expect at the courts. The students take notes of the proceedings and submit a court-monitoring report based on their notes that compares two or more courts with respect to their physical structure and the nature of the proceedings observed.

Over the past two years, the plaintiff has been repeatedly advised by his students that the defendant refused to allow them to take notes in her courtroom. In some cases, the students' note pads were seized by bailiffs, taken to the defendant's chambers, and then returned. The students were admonished not to take notes in the courtroom. On April 22, 2004, the plaintiff and a colleague who also assigns her students to court monitoring, attended a

hearing in the defendant's courtroom. They found two signs posted outside the courtroom. One stated: "All non-party observers must identify themselves to the sheriff." The other stated: "No talking, reading, writing, hats, sunglasses, while court is in session." Inside the courtroom was a third sign stating: "There is no reading, writing, sleeping, talking or gum chewing, while court is in session." When Judge Coco entered her courtroom, the plaintiff was sitting on a bench holding a pad of paper and a pen. When he began to take notes of the defendant's opening statement, she informed him that he could not take notes in her courtroom. When Mr. Goldschmidt asked, "Why not?", Judge Coco said it was the court's order, asked who Mr. Goldschmidt was, and without waiting for a response nodded to a bailiff who then removed the plaintiff from the courtroom. The plaintiff's colleague was removed from the courtroom moments later.

Plaintiff and his colleague then went to a courtroom on the same floor of the courthouse. This courtroom was occupied by Judge Donald D. Panarese. Here, they again tried to take notes and were again removed from the courtroom. Shortly afterward, as the plaintiff and his colleague were attempting to enter an elevator to leave the courthouse, they were stopped by Judge Panarese's bailiff, who instructed them to "stand right there" and called for her supervisor. When the supervisor arrived, the plaintiff was informed that "[t]he only people who can take notes in the

courtroom are the judge, the clerk, the state's attorney, and the public defender. Not even private attorneys can take notes in the courtroom." The plaintiff and his colleague were interrogated as to who they were and their purpose in attempting to take notes. They were then released.

In December, 2004, the plaintiff wrote to the chief judge of the Circuit Court of Cook County, informing him of the defendant's policy, the fact that the plaintiff had been removed from the courtroom for taking notes, and the difficulties his students were having with the defendant's policy against note-taking. The chief judge did not respond.

## Claims for Relief

Three claims for relief are presented. The plaintiff alleges that: 1) Judge Coco's conduct in establishing a policy that prohibits reading and note-taking in her courtroom deprives him and his students of their fundamental First Amendment rights of access to the courts; 2) the conduct of the courtroom bailiff in arresting the plaintiff for note-taking violated his Fourth Amendment right to be free from unreasonable searches and seizures; and 3) Judge Coco's policy of permitting note-taking only by herself, her clerk, the assistant states' attorneys, and the public defenders is a denial of Equal Protection of the laws under the Fourteenth Amendment, unjustified by any compelling governmental interest.

4

I. First Amendment Claim

Judge Coco's main argument is that her inherent power to maintain the order and decorum necessary to insure the proper administration of justice authorizes her to forbid an observer from taking notes while court is in session. Her rule presents a serious constitutional issue.

A sweeping prohibition of all note-taking by any outside party seems unlikely to withstand a challenge under the First Amendment. In the closest analogous case, *United States v. Columbia Broadcasting System, Inc.*, 497 F.2d 102, 107 (5th Cir. 1974), the court of appeals struck down a ban on courtroom sketching, saying "[w]e are unwilling to condone a sweeping prohibition of in-court sketching when there has been no showing whatsoever that sketching is in any way obtrusive or disruptive."). Taking notes is undoubtedly less obtrusive than sketching. While the Seventh Circuit has never had the need to address the issue directly, in upholding a prohibition on cameras in the courtroom the court noted that "cameras are qualitatively different from reporters' notetaking and sketching." *United States v. Kerley*, 753 F.2d 617, 621 (7th Cir. 1985).

The right of access to public trials and other court proceedings is required by the First Amendment to the Constitution, because "[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the fact-finding process, with

benefits to both the defendant and to society as a whole." *Globe Newspaper Co. v Superior Court for the County of Norfolk*, 457 U.S. 596, 606 (1982). "Thus to the extent that the First Amendment embraces a right of access to criminal trials, it is to insure that this constitutionally protected 'discussion of governmental affairs' is an informed one." *Id.* at 604-05. This right is a presumption of "constitutional magnitude" which extends to civil cases as well as criminal proceedings. *In the Matter of Continental Illinois Securities Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1984).

A total denial of access to a trial must be necessitated by a compelling governmental interest and narrowly tailored to serve that interest. *Globe Newspaper Co.*, 497 U.S. at 606-07, 608 n.20. The case at bar does not involve a total denial of access, but rather a limitation placed by the defendant on the right of access. That limitation must still withstand scrutiny for its neutrality and reasonableness. *Kerley*, 753 F.2d at 620 (7th Cir. 1985); *United States v. Hastings*, 695 F.2d 1278, 1282 (11th Cir. 1983)(regulation of the time, place and manner of news coverage is constitutional ". . . if it is reasonable, if it promotes 'significant governmental interests,' and if the restriction does not 'unwarrantably abridge . . . the opportunities for the communication of thought.'").

benefits to both the defendant and to society as a whole." *Globe Newspaper Co. v Superior Court for the County of Norfolk*, 457 U.S. 596, 606 (1982). "Thus to the extent that the First Amendment embraces a right of access to criminal trials, it is to insure that this constitutionally protected 'discussion of governmental affairs' is an informed one." *Id.* at 604-05. This right is a presumption of "constitutional magnitude" which extends to civil cases as well as criminal proceedings. *In the Matter of Continental Illinois Securities Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1984).

A total denial of access to a trial must be necessitated by a compelling governmental interest and narrowly tailored to serve that interest. *Globe Newspaper Co.*, 497 U.S. at 606-07, 608 n.20. The case at bar does not involve a total denial of access, but rather a limitation placed by the defendant on the right of access. That limitation must still withstand scrutiny for its neutrality and reasonableness. *Kerley*, 753 F.2d at 620 (7th Cir. 1985); *United States v. Hastings*, 695 F.2d 1278, 1282 (11th Cir. 1983)(regulation of the time, place and manner of news coverage is constitutional ". . . if it is reasonable, if it promotes 'significant governmental interests,' and if the restriction does not 'unwarrantably abridge . . . the opportunities for the communication of thought.'").

In our society, starting no later than junior high school, students are taught and expected to take notes at lectures, seminars, and in libraries so that they may have the ability to revisit what they have heard or read. This allows them more fully and accurately to evaluate and communicate the subject matter. Notes are taken to insure accuracy. The defendant's rule interdicts all who quietly take notes at a public trial, be they teachers, students, lawyers representing non-parties who may have similar interests, and courtroom monitors and evaluators of judicial performance representing public interest groups, or simply interested members of the public. A prohibition against note-taking is not supportive of the policy favoring informed public discussion; on the contrary it may foster errors in public perception.

The United States Supreme Court, which formerly had a policy against note-taking during oral arguments, dropped that rule and now permits non-parties to take notes. Mauro, "IN OTHER NEWS . . .": DEVELOPMENTS YOU WON'T READ ABOUT IN THE U.S. REPORTS, 39 Tulsa L.Rev. 11, Part II, Taking Note(s)(Fall 2003); *See also* Amar, ARCHITEXTURE, 77 Ind. L.J. 671, 680 (Fall 2002) (". . . [a] phone survey conducted in early 2002 reveals that none of the thirteen United States Courts of Appeals bans note-taking by members of the general public; nor does the highest court of any state, or of the District of Columbia."). At last report, all of

the appellate tribunals mentioned in the Indiana Law Journal article were still functioning in an ambience of order and decorum. Note-taking has not transformed their proceedings into Saturday night fraternity parties. The same holds true for the federal district courts; I am not aware of any federal district court that has a rule or order limiting the right of the press or anyone else to take notes during a public criminal or civil trial.

The defendant's position is that the right to attend trials is merely a right to be present, to observe and to listen. She argues that plaintiff, especially, has no right to take notes in her courtroom because he is not even a member of the media. However, the right of the press to access court proceedings is derivative of the public's right, and inside the courthouse, the press has no greater rights than those of the general public. *Nixon v. Warner Communications, Inc.* 435 U.S. 589, 609 (1978).

The defendant's blanket policy against note-taking cannot be justified on the grounds that domestic violence cases often involve "highly emotional parties", "outbursts", and the disclosure of "sensitive information regarding parties and witnesses." The same may be said of many types of cases, equally volatile, that are routinely reported in the press based on notes taken in the courtroom. Nor is the ban the only way to insure the maintenance of "an orderly, dignified environment." This is the same type of conclusory statement that the Supreme Court rejected in *Press-*

*Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1, 15 (1986)(rejecting prejudicial pre-trial publicity as a rationale for ordering closure of a suppression hearing)("The First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of [the right to a fair trial]. And any limitation must be 'narrowly tailored to serve that interest' . . . ").

Defendant also argues that Mr. Goldschmidt's access claim is legally insufficient for failure to plead various factual elements and legal theories. All that Federal Rule of Civil Procedure 8(a) requires is notice pleading, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Mid America Title Co. v. Kirk*, 991 F.2d 417, 421 (7th Cir. 1993); *Bennett v. Schmidt*, 153 F.3d 516, 518 ("Complaints need not plead law, or match facts to every element of a legal theory . . . ").

The motion to dismiss the claim of violation of a First Amendment right of access to judicial proceedings for legal insufficiency is denied.

## II. Fourth Amendment Claim

The defendant argues that Mr. Goldschmidt's claim for unreasonable seizure is insufficient. I agree. The complaint alleges that plaintiff was detained by the bailiff to another judge, to whose courtroom plaintiff had gone following his ejection

9

from the courtroom of Judge Coco. There is no allegation that the person who detained him was under the control of Judge Coco.

The motion to dismiss the Fourth Amendment claim is granted.

### III. Equal Protection Claim.

The plaintiff pleads that Judge Coco's policy of allowing herself to take notes but not plaintiff sanctions invidious treatment in favor of the court and denies him and the rest of the public equal protection. Plaintiff fundamentally does not have the same rights in her courtroom as does Judge Coco. His equal protection claim is dismissed.

The defendant's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted in part and denied in part.

**ENTER ORDER:**

*[signature: Elaine E. Bucklo]*

**Elaine E. Bucklo**
United States District Judge

Dated: February 7, 2006