# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **JONA GOLDSCHMIDT**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05 C 1822 |
| | ) |
| **HON. GLORIA G. COCO**, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This is a declaratory judgment action brought by plaintiff Jona Goldschmidt ("Goldschmidt") against the Honorable Gloria G. Coco ("Judge Coco"), a judge in the Circuit Court of Cook County, Illinois, under 42 U.S.C. § 1983 (2007). Goldschmidt alleges that a courtroom policy of Judge Coco that prohibited note-taking and the fact that a purported violation of Judge Coco's policy caused a courtroom bailiff to seize him violated his First and Fourth Amendment rights. Goldschmidt seeks a declaratory judgement that her policies violate the First and Fourth Amendments. Judge Coco has moved for summary judgment, arguing that Goldschmidt's claims are moot because writing is not currently prohibited in her courtroom, and that she had no involvement in Goldschmidt's detention. Judge Coco also contends that the Eleventh Amendment bars Goldschmidt from obtaining a declaration that past actions violated the Constitution. For the following reasons, I grant Judge Coco's motion.

I.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party meets this burden, the non-moving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. *Id.* at 694 (citing Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990)). The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). I must construe all facts in the light most favorable to Goldschmidt and draw all reasonable and justifiable inferences in his favor. *Anderson*, 477 U.S. at 255.

Taking the facts in the light most favorable to Goldschmidt, the following are the facts relevant to Judge Coco's motion: Goldschmidt is a college professor and an attorney licensed to practice law in Illinois. Goldschmidt allows his students the option of monitoring court sessions as part of their course work. One of the courtrooms at which some students attended hearings was

2

Judge Coco's. Judge Coco is a Supervising Associate Circuit Court Judge of the First Municipal District of the Circuit Court of Cook County, assigned to the Domestic Violence Section.

Goldschmidt contends that it came to his attention from his students that Judge Coco would not allow his students to take notes while in her courtroom. On April 22, 2004, Goldschmidt and a colleague attended proceedings in Judge Coco's courtroom. At that time, Judge Coco's courtroom was located at 1340 South Michigan Avenue. When Goldschmidt went to Judge Coco's courtroom, he saw two signs posted outside. One read, "All non-party observers must identify themselves to the sheriff" and one read "No talking, reading, writing, hats, sunglasses, while court is in session." Inside Judge Coco's courtroom, Goldschmidt saw another sign which read:

> There is no reading, writing, sleeping, talking or gum chewing while court is in session. No food or drinks are allowed in the courtroom. All pagers and cell phones must be turned off. Thank you. C.C. sheriffs."

Goldschmidt took a seat and Judge Coco began her opening statement. Goldschmidt began taking notes, and Judge Coco said to him, "Sir, you are not to be taking notes in this courtroom." Goldschmidt responded, "Why not?"; he contends he said this in a normal tone and did not raise his voice. Goldschmidt contends that Judge Coco then nodded her head to her bailiff, as is her common practice to enforce her courtroom rules. The bailiff then escorted Goldschmidt

out of Judge Coco's courtroom. His notepad was not seized, and he had no further interaction with Judge Coco that day. Instead, after he was removed from Judge Coco's courtroom he went into the courtroom of another judge, Judge Panarese, where he was again informed by a deputy that he was not allowed to take notes. After being so informed, he voluntarily left the courtroom. At that time, he was detained by a bailiff. Goldschmidt concedes that Judge Coco did not instruct any court staff to detain or hold him in the courthouse.

Goldschmidt subsequently returned to Judge Coco's courtroom on July 21, 2005. At that time, he saw no posted rule notices, and he was informed that he could now take notes in Judge Coco's courtroom. Since the incident on April 22, 2004, he has not been prohibited from taking notes in Judge Coco's courtroom.

Judge Coco has submitted an affidavit in which she avers that she has never promulgated written rules of courtroom decorum for other judges in the Domestic Violence Section, and that "[s]igns posted inside and outside of the courtroom pertaining to courtroom decorum . . . predated my assignment there and were, I assume, posted by the Sheriff's Office." However, Goldschmidt has presented an affidavit from a court reporter who was assigned on numerous occasions to report proceedings in her courtroom on Michigan Avenue. The court reporter avers that (1) only after Judge Coco's arrival did she recall signs being posted setting

forth written rules of courtroom decorum; (2) on numerous occasions she observed Judge Coco directing persons in her courtroom to abide by the rules set forth on her courtroom signs; and 3) she never saw any sheriff's employees posting signs in Judge Coco's courtroom. Goldschmidt has also presented an affidavit from a deputy clerk who at times in the past was assigned to Judge Coco's courtroom on Michigan Avenue. That clerk avers that (1) on numerous occasions she heard Judge Coco direct persons in her courtroom to abide by her decorum rules; (2) she never heard any sheriff's deputies say that the rules they announced at the opening of court were sheriff's department rules; (3) she understood the rules to be Judge Coco's rules; and (4) she never saw any sheriff employees posting signs in Judge Coco's courtroom.

On October 16, 2005, the Domestic Violence Section of the Circuit Court of Cook County moved to 555 West Harrison Street in Chicago; Judge Coco is now assigned to a courtroom at that location. Her new courtroom is larger than her old courtroom. Judge Coco has never posted signs in her new courtroom prohibiting note-taking, and she contends that there is no policy in her new courtroom prohibiting "writing during the judge's opening statement or otherwise." In addition, in an affidavit submitted as part of her motion for summary judgment Judge Coco states that she does not intend to establish or enact a future policy prohibiting note-taking in her courtroom.

5

Goldschmidt's original complaint alleged that Judge Coco violated his First, Fourth, and Fourteenth Amendment rights by prohibiting note-taking in her courtroom and by having him arrested for violating her policy prohibiting note-taking.[1] Judge Coco moved to dismiss the complaint, and I dismissed the Fourth and Fourteenth Amendment claims but allowed the First Amendment claim to proceed. *See Goldschmidt v. Coco*, 413 F. Supp.2d 949 (N.D. Ill. 2006). Goldschmidt then filed an amended complaint, alleging the preceding claim and alleging a Fourth Amendment violation on the basis that Judge Coco supervised the bailiff in her capacity as supervising judge for the courthouse and through her responsibility

---

[1]This complaint as well as the amended complaint also noted signs prohibiting reading in the courtroom, requiring people entering the courtroom to identify themselves and prohibiting any person from entering or leaving the courtroom while the judge is speaking. Goldschmidt has never alleged that he was subjected to any of these alleged rules. He is therefore without standing to complain about them. "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Hein v. Freedom From Religion Found., Inc.*, - U.S. -, 2007 WL 1803960, at *9 (June 25, 2007) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Goldschmidt does contend that he has standing to bring claims about these policies because he is bringing an overbreadth challenge to Judge Coco's policies so that, in his view, he need not establish an injury-in-fact. (Pl's. Memo. in Support of Resp. at 3-5.) However, as other courts have recognized, a party bringing an overbreadth challenge must still satisfy the other requirements of standing, including injury-in-fact. *See, e.g.*, *Covenant Media of Illinois, L.L.C. v. City of Des Plaines*, 476 F. Supp.2d 967, 984-85 (N.D. Ill. 2007) (holding plaintiff could not assert overbreadth challenge because he could not demonstrate that his injuries were caused by the ordinance he was challenging) (citing *Harp Adver. Illinois, Inc. v. Vill. of Chicago Ridge*, 9 F.3d 1290, 1291-92 (7th Cir. 1993)).

for promulgating her courthouse-wide courtroom decorum policies that the bailiff accused Goldschmidt of violating when he seized him. (*Id.* at ¶¶ 17, 20.)

Judge Coco raises three arguments in her motion for summary judgment. First, she contends that Goldschmidt's claims are moot because she has no current prohibition on taking notes in her new courtroom. Second, she argues that summary judgment on Goldschmidt's Fourth Amendment claim is appropriate because she was not involved in his detention. Third, she contends that the Eleventh Amendment prohibits Goldschmidt from seeking a declaratory judgment that past acts violate the Constitution.

## II.

Judge Coco argues that Goldschmidt's claims are moot because she has no current prohibition against taking notes in her new courtroom. In order for a plaintiff to maintain his standing to pursue his claims, they must avoid becoming moot; that is, they must continue to involve an actual, ongoing controversy. *See Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 490-91 (7th Cir. 2004) (citations omitted). A defendant's voluntary cessation of a practice only renders a claim moot when "subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000)) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203

7

(1968)). The party asserting mootness bears the burden of showing that the claims are moot. *Id.* As Judge Coco notes, the Seventh Circuit has previously held that "genuine" self-correction by a government official "has been treated with more solicitude by the courts than similar action by private parties." *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988) (citing 13A WRIGHT, ET. AL, FEDERAL PRACTICE AND PROCEDURE § 3533.7 (2d ed. 1984)).

Here, Judge Coco has submitted an affidavit in which she avers that she "has not enacted or established a policy" in her new courtroom which prohibits writing, nor does she "intend to establish or enact such a policy in the future." Goldschmidt also admits that when he later returned to Judge Coco's courtroom he no longer saw any posted rule notices prohibiting writing and was informed he could now take notes, and since the incident that is the subject of his present suit he has not been prohibited from taking notes in Judge Coco's courtroom.

Goldschmidt does present evidence that other judges within the Circuit Court of Cook County have enforced a "no note-taking" rule in their courtrooms as of earlier this year. However, he has not presented any evidence, or even alleged or attempted to infer, that Judge Coco was responsible for any of those other note-taking prohibitions. As Judge Coco notes, she is the only defendant in this case and it is solely her policies and not the policies of

8

other state court judges that are at issue in this litigation.[2] Even taking the facts in the light most favorable to Goldschmidt, there is no evidence that Judge Coco is still promulgating or enforcing a no note-taking policy. The fact that other judges in the Circuit Court may be enforcing such a rule may create some greater potential for Judge Coco to later enforce a no note-taking policy, but Judge Coco has averred that she has no intention of re-instituting such a policy. Therefore, I conclude that even taking the facts in the light most favorable to Goldschmidt, there is no reasonable expectation that Judge Coco's previous no note-taking policy will recur. I therefore grant summary judgment for Judge Coco on Goldschmidt's First Amendment claim.

### III.

Judge Coco also argues that I should grant summary judgment for her on Goldschmidt's Fourth Amendment claim because there is no evidence that she had any role in his purported detention. Goldschmidt has admitted that, after he left Judge Coco's courtroom, Judge Coco was unaware that Goldschmidt went to another judge's courtroom, had a conversation with the deputy there, or was ultimately detained outside of that judge's courtroom. Goldschmidt further concedes in his response that Judge Coco did not approve or

---

[2] Goldschmidt's amended complaint alleges that Judge Coco was responsible for initiating a "courthouse-wide" prohibition on note-taking. However, Judge Coco denies that she was responsible for the decorum policies of any other courtroom, and Goldschmidt has presented no admissible evidence to contradict that denial.

9

instruct any court staff to detain or otherwise hold him in the courthouse. Goldschmidt's only argument for Judge Coco's liability on his Fourth Amendment claim is that she, as supervising judge, was responsible for the no note-taking policy implemented by herself and other judges, so that she is liable if Goldschmidt was detained as a result of a purported violation of the policy that she promulgated. However, aside from his bald allegations Goldschmidt has presented no admissible evidence that Judge Coco was actually responsible for the courtroom policies of other judges, or that she had any supervisory authority over the officers that actually detained Goldschmidt.[3] To be liable for the constitutional violation of a subordinate, Judge Coco must have known of and facilitated, approved, condoned, or turned a blind eye to the conduct. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Here, even taking the facts in the light most favorable to Goldschmidt, he cannot show that this is the case. I therefore

---

[3] Goldschmidt does present an anonymous letter he purportedly received from a former courthouse employee who was assigned to Judge Coco's courtroom. In this letter the employee states that he or she "[o]verheard [Judge Coco] had meeting with other judges in D.V. section after your lawsuit to get them to follow 'no note taking' rule becuz [*sic*] so 'disruptive.'" This letter is hearsay, and it does not affirmatively establish that Judge Coco was successful in convincing other judges to adopt the policy, or that Judge Coco was somehow responsible for any policy to detain individuals who violated this purported policy in other courtrooms.

grant summary judgment for Judge Coco on Goldschmidt's Fourth Amendment claim.

IV.

For the above reasons, Judge Coco's motion for summary judgment is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: June 29, 2007